Joyce MANNING, on behalf of herself
and all others similarly situated,
Plaintiff,

v.

Wilson D. PALMER, Clerk of the Superior
Court of the State of Arizona, in and
for the County of Maricopa, on behalf
of himself and all others similarly situ-
ated, et al., Defendants.

No. CIV 73-31 PHX-CAM.

United States District Court,
D. Arizona.

Aug. 14, 1974.

William H. Harris, Phoenix, Ariz., for plaintiff.

William Carter, Phoenix, Ariz., for Wilson D. Palmer.

Lee Galusha, Phoenix, Ariz., for Commercial Acceptance & Finance Corp.

Filler, Paytas, Shannon, Fleming & Stephenson, Phoenix, Ariz., for Harold L. Lee.

Before TRASK, Circuit Judge, EAST and MUECKE, District Judges.

## OPINION

MUECKE, District Judge:

Plaintiff Joyce Manning brought this action as a class action in behalf of her-

self and all other residents and citizens whatsoever situated in the State of Arizona, pursuant to Rule 23(a) and (b)(1) of the Federal Rules of Civil Procedure, Title 42, Sect. 1983 and Title 28, Sect. 1343 and the Fourteenth Amendment to the United States Constitution for a preliminary and permanent injunction enjoining Defendant Wilson D. Palmer, the Clerk of the Superior Court of Maricopa County, and others similarly situated from continuing the practice of issuing writs of garnishment and attachment prior to judgment, in accordance with 12 A.R.S. 1521 et seq., and 12 A.R.S. 1571 et seq., and to declare the same statutes unconstitutional insofar as they allow garnishment and attachment prior to judgment.

This Court has considered and by stipulation and order has provided that Plaintiff Joyce Manning may maintain a class action in behalf of herself and all other persons similarly situated.

Defendant Commercial Acceptance (Commercial) commenced an action in the Superior Court of. Maricopa County, State of Arizona, on December 1, 1972, to collect a debt alleged to be owed by plaintiff to Commercial. Commercial applied for a writ of garnishment prior to judgment against the plaintiff naming the Valley National Bank (Valley Bank) as a corporation indebted to plaintiff through two bank accounts in plaintiff's name, totaling some $93.89.

Defendant Wilson D. Palmer, through his deputy, issued the prejudgment writ of garnishment on December 1, 1972, in accordance with the laws of the State of Arizona. Commercial caused said writ of garnishment to be served on Valley Bank on December 1, 1972, and Valley Bank responded on December 6, 1972. Plaintiff received her first notice of the pending lawsuit with Commercial by a letter from Valley Bank on December 4, 1972. Plaintiff received official notice of the pending lawsuit on December 10, 1972, when she was personally served with a copy of the summons and complaint. In accordance with the laws of Arizona, plaintiff received no notice of the garnishment until after the money was impounded by Valley Bank, and plaintiff will be given no opportunity to contest the validity of the garnishment prior to trial of the lawsuit referred to above.

Plaintiff initially prayed for this Court to issue a preliminary injunction enjoining Defendant Palmer and others similarly situated from issuing any prejudgment writs of garnishment or attachment during the pendency of this action. This Court, by order of August 13, 1973, issued the requested preliminary injunction.

Plaintiff contends that the class of defendants represented by Mr. Wilson D. Palmer, as provided in Rule 23(a) and (b)(1) of the Federal Rules of Civil Procedure, is composed of thirteen of the fourteen Arizona county clerks and seventy-two of the eighty-nine Arizona justices of the peace. The one non-represented county clerk has been served but chooses not to appear. Sixteen of the justices of the peace have not been served. The seventeenth, Judge Harold Lee, is separately represented by his own counsel.

The defendant class has been named by plaintiff in both their individual and official capacities in order that all present and future county clerks and justices of the peace may be enjoined from the issuance of prejudgment writs of garnishment and attachment. This defendant class is also representative of the type of public officials who perform routine statutory and ministerial duties, allowing very little in the way of personal discretion in the issuance of writs of garnishment and attachment.

Conflicting court opinions have created problems for these officials in the application of the prejudgment garnishment laws in Arizona. The conflict arose out of divergent opinions as expressed by the United States Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and by the Arizona Supreme Court in

Roofing Wholesale Co., Inc. v. Palmer, 108 Ariz. 508, 502 P.2d 1327 (1972).

In *Fuentes*, the issue decided was whether procedural due process required an opportunity for a hearing before the state authorizes its agents to seize property in possession of a person upon the application of another. The United States Supreme Court held that the Florida and Pennsylvania prejudgment replevin statutes were invalid under the Fourteenth Amendment since they work a deprivation of property without due process by denying the right to a prior opportunity to be heard before chattels are taken from the possessor.

The Arizona Supreme Court in *Roofing Wholesale, supra,* held that it would not follow the holding of *Fuentes, supra,* since *inter alia,* it was rendered by a four to three Court.

"We do not believe, however, that it is unreasonable to ask that before we are required to declare unconstitutional statutes enacted by our legislature with the resulting chaos to an important part of our commercial and contract law, that the United States Supreme Court speak with at least a majority voice on the subject. Until such time as the United States Supreme Court decides this question by a clear majority, we will continue to uphold the garnishment and attachment statutes of this State in cases wherein wages are not involved."

The United States District Court for the District of Arizona in Western Coach Corp. v. Shreve, 344 F.Supp. 1136 (1972), a decision rendered after *Fuentes* on June 15, 1972 and before *Roofing Wholesale, supra,* was subsequently affirmed by the Ninth Circuit at 475 F.2d 754 (1973) on March 6, 1973. In *Western Coach,* the court in a declaratory judgment action as provided for under Title 28, § 2201 U.S.C. held that:

"This Court, therefore, declares, adjudges and decrees that insofar as the Arizona garnishment statutes A.R.S. 12–1571 to 12–1595 permit prejudgment garnishment without providing the defendant adequate notice and opportunity to be heard, that said statutes violate the due process clause of the Fourteenth Amendment of the United States Constitution." 344 F. Supp. at 1138.

This Court has also reviewed the three-judge Spielman-Fond, Inc. v. Hanson's Inc., 379 F.Supp. 997, decision rendered on July 13, 1973 and affirmed by the United States Supreme Court on May 28, 1974 which heard a constitutional challenge that the Arizona statutes relating to mechanics' and materialmen's liens, A.R.S. § 33–981 et seq., alleging that these statutes are in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. In *Spielman-Fond,* which concerned a lien upon real property, the court held:

" . . . the filing of a mechanics' and materialmen's lien does not amount to a taking of a significant property interest, and that, accordingly, A.R.S. § 33–981 *et seq.* are not violative of due process of law under the Fourteenth Amendment for failing to provide for notice and hearing prior to the filing of the lien."

Since the parties here agree that only personal property is involved in the instant case, this court will only deal with writs of garnishment and attachment as they affect personal property.

■■ This Court has no authority to question a decision of the United States Supreme Court when that court has considered a matter by more than a quorum of that court subsequently deciding with a majority thereof. Since the United States Supreme Court continues to issue four to three decisions and has done so for many years, this Court will continue to follow them as the law.[1] Furthermore, this Court, based upon the authority of *Fuentes* and *Western Coach, Inc.,*

---

1. Without attempting to make an exhaustive review of plurality opinions we note that

aside from *Fuentes,* the Supreme Court in volumes 404 and 405 of its reports has ren-

must hold that the Arizona statutes A. R.S. § 12–1521 et seq. and § 12–1571 et seq., insofar as they permit prejudgment garnishment and attachment without providing the defendant adequate notice and an opportunity to be heard, violate the due process clause of the Fourteenth Amendment and are therefore unconstitutional.

We further consider that although the United States Supreme Court in *Fuentes* declared that the deprivation of property without due process was invalid under the Constitution, the Court did provide for certain exceptions. For example:

"There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. . . . These situations, however, must be truly unusual. Only in a few limited situations has this court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. Thus, the Court has allowed summary seizure of property to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and

to protect the public from misbranded drugs and contaminated food." 407 U.S. at 90–92, 92 S.Ct. at 1999–2000, 32 L.Ed.2d 556 (citation and footnotes omitted).

The court added further exceptions in *Fuentes* that procedural due process does not require that a hearing be held before repossession of property sold under conditional sales contract unless buyer, having received notice of his opportunity for such a hearing prior to repossession, takes advantage of it. "There may be cases in which a creditor could make a showing of immediate danger that a debtor will destroy or conceal disputed goods." 407 U.S. at 93, 92 S.Ct. at 2000.

■ It is the opinion of this Court that none of the exceptions to a due process hearing as stated in *Fuentes* apply to the facts of the instant case.

While this opinion was being considered by this Court, the United States Supreme Court case, Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) was decided on May 13, 1974. This Court then asked that counsel in this case prepare briefs on the question of whether the *Mitchell* opinion affects this case.

Counsel have complied with the Court's order and supplemental briefs from the plaintiff and Defendants Palmer and Lee have been received and considered.

In reviewing *Mitchell, supra,* and *Fuentes, supra,* and briefs of counsel, this Court is of the opinion that *Mitchell* can be clearly distinguished from

---

dered nine opinions of the Court by a plurality of four. See Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); United States v. Campos-Serrano, 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971); Schilb v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971); Reliance Electric Co. v. Emerson Electric Co., 404 U.S. 418, 92 S.Ct. 596, 30 L.Ed.2d 575 (1972); Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); FPC v. Florida Power & Light Co., 404 U.S. 453, 92 S.Ct. 637, 30 L.Ed.2d 600 (1972); Fein v. Selective

Service System Local Board No. 7, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972); Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

Moreover in a subsequent opinion of the Court announced by the Chief Justice with the concurrence of five other Justices the Court cited *Fuentes* with approval. See Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

*Fuentes* in several important ways. For example:

*Fuentes* was concerned with the constitutionality of the Florida and Pennsylvania replevin statutes. Under these statutes the secured installment seller was permitted to repossess the goods sold, without notice or hearing and without judicial order or supervision, but with the help of the sheriff operating under the writ issued by the court clerk at the behest of the seller. Because this repossession was carried out without notice or an opportunity for hearing and without judicial participation, this kind of seizure was held violative of the Due Process Clause.

In *Mitchell,* the Louisiana Code of Civil Procedure makes available to a mortgage or lien holder a writ of sequestration to forestall waste or alienation of the encumbered property. While this writ is obtainable on the creditor's *ex parte* application without notice to the debtor or an opportunity for hearing, the writ will issue only upon a verified affidavit and upon a judge's authority after the creditor has filed a sufficient bond. The debtor may immediately seek dissolution of the writ, which must be ordered unless the creditor proves the grounds for issuance by proving the existence of the debt, lien, or delinquency, and failing to adequately do so, the court may order the return of the property and assess damages, including attorneys' fees, in the debtor's favor.

The United States Supreme Court said while comparing *Fuentes, supra,* to *Mitchell, supra,* that:

" . . . we are convinced that *Fuentes* was decided against a factual and legal background sufficiently different from that now before us and that it does not require the invalidation of the Louisiana sequestration statute, either on its face or as applied in this case."

Counsel for all parties are unanimous in their collective reactions as expressed by their briefs that *Mitchell* does not change the outcome of the instant case in light of *Fuentes,* and we agree.

In *Fuentes,* the replevin writ was issued by a clerk of the court on a mere claim that the grounds for the writ existed. In *Mitchell,* the writ of sesquestration could not issue without the express authorization from a judge. The critical difference between the authority vested in a clerk or a justice of the peace to perform ministerial acts and the judicial review performed by a judge prior to directing the issuance of a writ was heavily emphasized by Justice White in *Mitchell.*

■ Even though counsel for Defendant Harold L. Lee attempts to equate the function of a justice of the peace in the issuance of prejudgment remedies in Arizona with the judge authorized writ of sequestration in *Mitchell,* this Court is of the opinion that clerks of the court and justices of the peace in Arizona perform only routine ministerial acts and are not authorized under statute to provide judicial review of prejudgment remedies.

It is, therefore, the finding of this Court that the rationale of *Mitchell, supra,* does not apply to the issues now before this Court. Therefore,

■ It is hereby ordered, adjudged and decreed that a permanent injunction will issue prohibiting Defendant Wilson D. Palmer, Clerk of the Superior Court of the State of Arizona, in and for the County of Maricopa, and all other defendants similarly situated, and Harold L. Lee, Justice of the Peace for the Northeast Phoenix Precinct, and all other defendants similarly situated, present and future, from issuing any prejudgment writs of garnishment and attachment pursuant to A.R.S. § 12–1521 et seq. and § 12–1571 et seq., as these apply to personal property that are inconsistent with this opinion. Further, plaintiffs' motion for summary judgment is granted.